# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 25-MJ-258-GMH-2** |
| **CIERRA CHARITY LEE,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION[1]

Defendant Cierra Charity Lee is eligible for pretrial detention because this case involves: (ii) an offense for which the maximum sentence is life imprisonment (e.g., 18 U.S.C. § 1201(a) (Kidnapping)); (ii) a felony that involves a dangerous weapon (e.g., 22 D.C. Code §§ 2001 and 4502 (Kidnapping While Armed)); and (iii) a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness. *See* 18 U.S.C. § 3142(f)(1)(B), (E); (2)(B). Furthermore, Defendant Lee should be detained pending trial to ensure her appearance and protect the safety of any other person and the community. *See* 18 U.S.C. § 3142(e)(1).

On October 20, 2025, Defendant Bynum and Defendant Lee violently attacked and kidnapped Y.C. ("Victim 1") and L.F. ("Victim 2") at the direction of Defendant Edwards. Their plan was designed for one purpose: to prevent Victim 1 from moving forward in a separate criminal case against Defendant Edwards in Prince George's County, Maryland. Defendant Lee's offense conduct shows her violent nature and willingness to go to extreme lengths to thwart the fair administration of justice. Accordingly, the United States agrees with Pretrial Services'

---

[1] This memorandum solely addresses the question of pretrial detention as it relates to Defendant Lee. The United States has already filed detention memorandums for Defendants Bynum and Edwards. *See United States v. Robynn Danielle Bynum* (25-MJ-258-GMH-1) (Nov. 10, 2025) (ECF No. 16); *United States v. Kayvon Edwards* (25-MJ-258-GMH-3) (Nov. 11, 2025) (ECF No. 20).

recommendation that no condition or combination of conditions can reasonably assure Defendant Lee's appearance in court or the safety of the community. *See* Pretrial Services Report at 1. The United States requests that the Court consider the following points and authorities, as well as any other information presented at the detention hearing, and order Defendant Lee detained pending trial.

## FACTUAL BACKGROUND

On October 20, 2025, at 23:44 hours, a call for assistance was received at 3236 Minnesota Avenue Southeast, Washington, D.C. 20019, in reference to a stabbing. A United States Park Police Officer arrived on scene first and located Victim 1 and Victim 2 on the curb across from 3228 Minnesota Avenue Southeast, Washington, D.C. 20019. Victim 1 was suffering from multiple stab wounds to her back and Victim 2 had a laceration to her right wrist. The victims advised that they had been kidnapped, and they were dropped off at an unknown location. The victims stated that they then walked to their current location to seek assistance and were able to flag down a passerby who called 9-1-1.

Sixth District Units with the Metropolitan Police Department ("MPD") arrived on scene and continued to interview the victims, who stated that they were going to babysit for a friend of Victim 1's at an apartment complex near Suitland Parkway & Stanton Road Southeast, Washington D.C. The victims advised that when they arrived at the location, they went inside the residence to get the baby and supplies and Suspect 1 and Suspect 2 "jumped" and stabbed them. The victims then advised they were duct taped and held in a bathroom before being put in Victim 1's car and were then driven to an unknown location and left in the vehicle. Victim 1 and Victim 2 eventually exited the car and wandered around until they could get help. Victim 1 and Victim 2

were treated on scene by the District of Columbia Fire and Emergency Medical Services Department and transported to a local area hospital for treatment.

      The MPD's Sixth District units canvassed the area for Victim 1's vehicle, which was eventually located in a parked and unoccupied state in the 3200 block of M Street Southeast, Washington, D.C. 20019. A cursory search of the vehicle was conducted, and blood stains and pieces of duct tape were observed on the back seat. Law enforcement also observed that its front passenger tire was flat.

      The MPD's Seventh Detective's Office was notified and Detective Quinlan responded to the scene. Victim 1's vehicle was parked on the south side in the 3200 block M Street Southeast, Washington D.C. 20019, near the intersections of Branch Avenue, Anacostia Road and M Street Southeast, Washington, D.C. Blood stains were observed on the rear driver's side seat and strips of duct tape were on the rear floorboard. The vehicle was photographed on scene and taken as evidence pending a search warrant.



*Figure 1: Duct tape in the rear of Victim 1's vehicle*

3



*Figure 2: Stains consistent with blood on the rear seat of Victim 1's vehicle*

A preliminary search of the MPD Crime Camera at Randle Circle showed Victim 1 and Victim 2 wandering around the circle at approximately 23:39 hours and then heading northbound on Minnesota Avenue Southeast, Washington, D.C. The footage further showed emergency personnel arriving on scene.

Both Victim 1 and Victim 2 were interviewed throughout the course of the investigation. It was learned that Victim 1 was also the victim in a criminal case against Defendant Edwards, which stemmed from an alleged rape that occurred in January 2025 in Maryland. Defendant Edwards, who was incarcerated in that matter, was due in court on October 21, 2025.[2] Suspect 1, who was later identified as Defendant Bynum, befriended Victim 1 approximately three months ago on Instagram. Defendant Bynum stated she was pregnant and was looking for friends in the

---

[2]    Prince George's County, Maryland, Case No. 25-0002554. It should be noted that this matter was dismissed due to burden of proof issues.

area. Victim 1 and Defendant Bynum became friends and even worked together for a company called Legal Shield. Approximately two months ago, Victim 1 was talking with Defendant Bynum who advised that Victim 1 knew Defendant Bynum's "baby-daddy." When Victim 1 asked who the "baby-daddy" was, Defendant Bynum advised her that it was "Kayvon" and that she needed to drop her case against him. At one point, Defendant Bynum sent Victim 1 the below message:



*Figure 3: Message from Defendant Bynum to Victim 1*

Victim 1 eventually cut all ties with Defendant Bynum and blocked her on social media.

Approximately one month later, Suspect 2, who was later identified as Defendant Lee, formed a friendship with Victim 1 through Instagram. Defendant Lee advised that she was a hairdresser and offered to do Victim 1's hair. They communicated online and, on October 19, 2025, Defendant Lee: (i) asked Victim 1 if Victim 1 could babysit for her; and (ii) offered to pay

Victim 1 for her services. Victim 1 agreed and arrived at the location she was directed to, which was 2402 Irving Place Southeast, Washington, D.C.



*Figure 4: Defendant Lee offering to pay Victim 1 for a "babysitting job"*

When Victim 1 arrived at the location, however, she did not feel comfortable because she was by herself, and Victim 1 decided to leave. Defendant Lee called again on October 20, 2025, and asked Victim 1 to babysit and Victim 1 agreed. Victim 1 called Victim 2 at approximately 20:00 hours to babysit with her, left her residence in Maryland, and picked Victim 2 up from another location in Maryland before heading to Defendant Lee's residence at 2402 Irving Place Southeast, Washington, D.C.

When Victim 1 and Victim 2 arrived at the location, Defendant Lee came out from the rear of the residence, and she brought the victims in through the side gate into the basement. Once inside, Defendant Lee handed Victim 1 a car seat and Victim 2 a bag. Defendant Bynum then came out of a room from behind them and began stabbing Victim 1 in the back while yelling profanities at her. Victim 1 fell to the ground and, while Victim 2 attempted to intervene, Victim 2 was cut on her wrist and elbow. Defendant Lee grabbed Victim 2 and brought her into the bathroom and duct taped her hands together. Defendant Bynum brought Victim 1 into the bathroom as well and duct taped her hands together.

Defendant Bynum and Defendant Lee then went through the victims' pockets and took their phones, car keys, and other property[3], and put them into a bag. Victim 1 mentioned that Defendant Lee tended to her injuries and, while doing so, inquired about the facts of the rape matter involving Defendant Edwards.[4] According to Victim 1, Defendant Lee continually entered and exited the bathroom at this time while she attempted to clean the blood from the area. Both victims did not know how long they were in the bathroom, but Defendant Lee and Defendant Bynum eventually told the victims they were going to be taken to Pennsylvania and dropped off somewhere so they couldn't get back to Maryland for court. During the yelling, it was learned that Defendant Lee was actually the mother of "Kayvon's" child.

Defendant Lee and Defendant Bynum then escorted the victims to Victim 1's vehicle. Ring camera footage from the rear of 2401 Irving Place Southeast, Washington, D.C, captured

---

[3]        Victim 2 told law enforcement that her phone, apple watch, phone charger, and headphones were taken.

[4]        Victim 1 did note that, while she was held in the bathroom, Defendant Lee stated she didn't want to hurt Victim 1, but that Defendant Lee had engaged in the criminal conduct due to "peer pressure." At one point, Defendant Lee allegedly even offered to call the police. However, Victim 1 thought Defendant Lee's comments were insincere, and further believed that Defendant Lee was simply trying to protect herself.

the group walking to Victim 1's car before it left the area. The time stamp shows 21:21 hours.



*Figure 5: Defendant Lee and Defendant Bynum walking the victims to Victim 1's car*

During their time in the vehicle, the victims' eyes were duct taped, and they did not observe where they were traveling. They both heard Defendant Bynum and Defendant Lee arguing about how the individual who was driving was doing a bad job, and that the driver was running red lights and swerving. Eventually, the victims felt a bump as if the vehicle struck something and the vehicle came to a stop. The victims heard Defendant Bynum and Defendant Lee get out of the vehicle, close the doors, and then lock the car. The victims stayed in the vehicle for approximately 30 minutes and did not know if Defendant Bynum and Defendant Lee were outside the vehicle. The victims then assisted each other with removing the duct tape from their eyes and hands and fled from the vehicle. The victims were able to flag down a citizen and called 9-1-1, which prompted law enforcement to respond.

Victim 1 and Victim 2 were separately shown a Google map view of 2401 Irving Place Southeast, Washington, D.C. 20020, and they both confirmed it was the residence where the

assault took place.[5] The victims also stated there was a lot of blood in the bathroom from the assault. Victim 1 suffered four, approximately one-inch, stab wounds to her back and a laceration to her left index finger. Victim 2 suffered a laceration to her wrist. Both victims were treated and released from the local area hospital.

Law enforcement created a 9-person color photo array with Defendant Bynum in position #2 and created a separate 9-person color photo array with Defendant Lee in position #3 to be shown to Victim 1. MPD Detective Couick assisted with a photo viewing procedure inside of the Seventh District Detectives Office Interview Room. The photo array containing Defendant Bynum was displayed to Victim 1, who nodded and pointed to #2. Victim 1 was asked for a statement of confidence, and she stated "Very." Victim 1 then circled the number under the picture and placed her initials on it. Victim 1 was then displayed the photo array for Defendant Lee, and she appeared visibly upset with tears. She selected #3, circled the number under the picture and placed her initials on it. After looking at the photo she flipped the paper over. When asked for her statement of confidence she mentioned "For sure; that face don't leave my brain."

Law enforcement created another 9-person color photo array with Defendant Bynum in position #3 and a separate photo array with Defendant Lee in position #2. MPD Detective Douglas assisted with a photo array viewing procedure inside of the Seventh District Detectives Office Interview Room. The photo array containing Defendant Lee in position #2 was shown first to Victim 2. She pointed to #2 and mentioned, "This is the one who grabbed me." When asked for her statement of confidence she stated "100%." Victim 2 then circled the number under #2's picture and placed her initials on it. Victim 2 was then shown the photo array with Defendant

---

[5]     Victim 1 confirmed that although she had been directed to 2402 Irving Place Southeast, Washington, D.C., as described above, 2401 Irving Place Southeast, Washington, D.C., was in fact the residence where the offenses occurred.

Bynum in position #3 and selected #3. When asked for her statement of confidence she stated "100%." When asked what she saw #3 do, Victim 2 stated she "Stabbed us."

On October 29, 2025, law enforcement reviewed calls from the Prince George's County Department of Corrections located at 13400 Dille Drive, Upper Marlboro, Maryland 20772.

On October 20, 2025, at 18:20 hours, Defendant Edwards placed a call to a telephone number associated with Defendant Bynum using PIN # 060371[6]. During this call, Defendant Edwards spoke with a female and asked her several times if she knew: (i) how to drive; and (ii) what she was doing. Defendant Edwards questioned whether the female caller trusted herself to get to the destination and further noted, "If you get caught while he in that car you're done." Defendant Edwards told the caller, "Please do not let me the [expletive] down," and stated that, because he would be at court, he wouldn't know about the "type of fun y'all going be having." Defendant Edwards suggested that the female caller text him "we Gucci" or "good morning boo!!" if they did have "their fun" and did "the shit." This conversation occurred before the victims arrived at Defendant Lee's residence that day.

On October 20, 2025, at 21:36 hours, Defendant Edwards placed another call to a telephone number associated with Defendant Lee using PIN # 059605.[7] During the call, a female is overheard saying "move over before you crash … slow down." Then the female instructed Defendant Edwards to call her back the following day.

---

[6]     A review of the underlying call detail records shows that PIN # 060371 was associated with Prince George's County Department of Corrections inmate "Zion Peters." Nevertheless, after listening to this call, law enforcement determined that it was made by Defendant Edwards by: (i) comparing the caller's tone, accent, and overall voice to that of Defendant Edwards's other jail calls; and (ii) reviewing the substance of the call, which appeared to pertain to the offense conduct.

[7]     A review of the underlying call detail records shows that PIN # 059605 was associated with Prince George's County Department of Corrections inmate "Keyvon Edwards."

On October 20, 2025, at 21:44 hours, Defendant Edwards placed an additional call utilizing PIN # 059605 to a telephone number associated with Defendant Lee. On the call, Defendant Edwards stated, "All I'm hearing is don't crash, move over." A female then stated to Defendant Edwards, "She keep hitting the curb" and told Defendant Edwards about how the vehicle she was using had been damaged. The female caller then advised Defendant Edwards that the vehicle's tire was flat. Defendant Edwards told the female caller, "I got another number for you so somebody can pull up on you . . . you gotta call him right now though." Defendant Edwards then later asked the female "where's he at?" and the female caller responded, "back of the car." This prompted Defendant Edwards to ask, "he alright?" The female caller then responded, "what do you mean?" which prompted Defendant Edwards to chuckle and say, "nothing, I am about to give you the number now."

Defendant Edwards then proceeded to give the female caller a cell phone number and told the caller to ask for "white boy." The female caller then asked Defendant Edwards, "is he actually white?" and Defendant Edwards responded, "yes Cierra." Defendant Edwards then told the female caller, "You gotta make sure he's dead." The female caller responded, "it's not just him fool … brought his best friend with him, we took that too."

On October 20, 2025, at 21:55 hours, Defendant Edwards placed another call utilizing PIN # 059605 to a telephone number associated with Defendant Lee. During the conversation, Defendant Edwards asked, "Y'all not nowhere in the open is y'all?" A female then stated, "this car is flat we can't go nowhere in the car . . . so we parked the car and moved away [inaudible]." Defendant Edwards then responded, "so y'all left?" Defendant Edwards also asked, "they can move?" The female then stated, "yeah . . . there is nothing we can do, the car is flat, what the [expletive] you want us to drive on a flat tire and draw attention [inaudible]." Defendant Edwards

11

then asked, "so you y'all gonna leave them right there?" and the female caller stated, "they ain't got no keys to get out, they ain't got nothing."

The female caller continued, noting to Defendant Edwards that, "he dropped em, he's not gonna show up." Defendant Edwards responded, "he said he is gonna show up to what?" The female caller replied, "To you know what." Defendant Edwards then stated, "to my shit?" and the female caller responded, "yeah." Towards the end of the conversation, Defendant Edwards told the female caller, "Call [inaudible] . . . and tell him to tell [inaudible] to pick y'all up right now please." Based on law enforcement's investigation of this matter, it was determined that Defendant Edwards and the female caller were discussing whether Victim 1 was going to appear in court for Defendant Edwards's criminal case in Prince George's County, Maryland.

On November 5, 2025, all three defendants were arrested pursuant to a criminal complaint signed by United States Magistrate Judge G. Michael Harvey. *See* (ECF No. 1). Law enforcement also executed a search warrant at 2401 Irving Place Southeast, Washington, D.C. During this time, officers found, among other things: (i) crinkled duct tape in the hallway of the basement level of the residence; (ii) blood matter in the bathroom located in the basement level of the residence; (iii) a duct tape roll in Defendant Lee's bedroom; and (iv) Defendant Edwards's identification card in Defendant Lee's bedroom. Law enforcement also found a note that appears to be from Defendant Edwards to Defendant Lee, which intimated that Defendant Edwards intended on harming Defendant Lee upon being released from jail. A photo of that letter is depicted below.



*Figure 6: Letter from Defendant Edwards to Defendant Lee*

## PROCEDURAL HISTORY

On October 31, 2025, Magistrate G. Michael Harvey approved a federal criminal complaint against the defendants for the conduct described above. (ECF No. 1). The complaint charges all three defendants with violations of: (i) 18 U.S.C. § 1201(c) (Conspiracy to Commit Kidnapping); (ii) 18 U.S.C. § 1201(a) (Kidnapping); (iii) 22 D.C. Code § 402 (Assault with a Dangerous Weapon); (iv) 22 D.C. Code §§ 2001 and 4502 (Kidnapping While Armed); and (v) 22 D.C. Code §§ 2801 and 4502 (Armed Robbery).

13

On November 5, 2025, each defendant was arrested pursuant to the aforementioned complaint. (ECF Nos. 6-8). On November 6, 2025, the defendants had their respective initial appearances, and the Court ordered the defendants held without bond pending their detention hearings. Defendant Bynum's detention hearing is scheduled for November 10, 2025, and Defendant Lee's and Defendant Edwards's detention hearings are scheduled for November 12, 2025.

## **ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).

In determining whether any condition or combinations of conditions will reasonably assure the appearance of a defendant and the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) his history and characteristics; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by his release. 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the United States may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States*

14

*v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

A review and understanding of the facts and circumstances in this case demonstrate that there are no conditions or combination of conditions that would ensure Defendant Lee's appearance and the safety of the community should she be released. *See* PSR at 1. Accordingly, the Court should detain Defendant Lee pending trial.

## I.    The Nature and Circumstances of the Offense Support Detention.

The first factor to be considered is the nature and circumstances of the offense charged, which strongly weighs in favor of detention for Defendant Lee.

The defendants' conspiracy against Victim 1 was premediated, sophisticated, and long-lasting. Months before the October 20th crimes were committed, Defendant Bynum had already attempted to intimidate Victim 1 into dropping her charges against Defendant Edwards in Maryland. When this did not work, Defendant Lee entered the picture and created a fake "babysitting" job so she could lure Victim 1 to her residence. Defendant Lee then knowingly invited Defendant Bynum to this supposed babysitting opportunity even though Victim 1 had no idea Defendant Bynum was going to be present. When Victim 1 and Victim 2 got to Defendant Lee's residence, Defendant Lee led them to an area where Defendant Bynum was waiting with a knife. Defendant Bynum then proceeded to attack the victims, stabbing Victim 1 multiple times in the back and further slashing Victim 2 during her attack of Victim 1.

After Defendant Bynum's unprovoked and premeditated strike, the victims were then brought into the basement bathroom, and their hands were duct taped. At this point, instead of

calling 9-1-1 or seeking emergency treatment for the victims, Defendant Bynum and Defendant Lee proceeded to take the victims' possessions, such as their keys and phones. Defendant Bynum also stood by while Defendant Lee: (i) questioned Victim 1 about Victim 1's rape case against Defendant Edwards in Maryland; and (ii) attempted to clean up the blood in the bathroom. While it does appear that Defendant Lee tended to at least Victim 1's injuries, these gestures of "kindness" are overshadowed by her callous disregard for the victims' wellbeing and her calculated decision to lure Victim 1 into the presence of Defendant Bynum—a person who had previously been verbally aggressive toward Victim 1 and whom Victim 1 was actively avoiding.

Defendant Bynum and Defendant Lee then moved the victims from the bathroom to Victim 1's car. Once inside the vehicle, Defendant Bynum and Defendant Lee again did not seek help for the victims. Instead, they duct taped the victims' eyes and attempted to drive to Pennsylvania to intentionally obstruct Victim 1's rape case against Defendant Edwards. This obvious motive is corroborated by Defendant Bynum's text messages to Victim 1, which reveal her attempt to intimidate and dissuade Victim 1 from cooperating in the Maryland prosecution. Defendant Lee's shared objective is evident from her deliberate deception in luring the victims into a situation where they would unexpectedly encounter Defendant Bynum, knowing the risk of violence that would follow.

Luckily for the victims, Defendant Bynum's inexperience as a driver brought this brutal act of violence to an abrupt end when she caused Victim 1's car to sustain a flat tire. Video surveillance later captured, what appears to be Defendant Bynum and Defendant Lee, inspecting the car from the street while the victims—bound, bleeding, and injured—remained in the backseat. The footage underscores Defendant Lee and Defendant Bynum's complete disregard for the victims' wellbeing, even as they stood mere feet away from the vehicle, choosing not to seek

16

medical attention or alert authorities despite the victims' distress.

To evade law enforcement and conceal their involvement in this violent crime, Defendant Bynum and Defendant Lee fled the scene, abandoning both victims while they were bound in Victim 1's vehicle.

The evidence makes clear that Defendant Edwards orchestrated these events. While incarcerated, he sought to pressure Victim 1 into dropping the charges against him in Maryland and enlisted Defendant Bynum and Defendant Lee to help achieve that goal. Indeed, the person who stood to gain the most from this brutal crime was Defendant Edwards himself. Prior to the kidnapping, Defendant Edwards warned Defendant Bynum about the consequences of getting caught, and he referred to the "fun" Defendant Bynum and Defendant Lee were expected to have with Victim 1. Defendant Edwards also received real time updates about the kidnapping from Defendant Lee as it was unfolding, and he even told Defendant Lee that she needed to make sure Victim 1 was dead after learning that Defendants Bynum and Lee crashed their getaway car. Defendant Edwards was solely focused on getting Victim 1 to drop the charges against him, and Defendant Lee confirmed for him that such a result had been achieved during the commission of the crimes.

Thus, this factor weighs in favor of detention.

## II.    <u>The Weight of the Evidence Against the Defendant is Formidable.</u>

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[8] The United States's case against Defendant Lee is overwhelming. The victims'

---

[8]     This factor should be equally weighed. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." No. 23-CR-25, 2023 WL 1778194, at *8 (D.D.C. Feb. 6, 2023). Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is

descriptions of the offenses are extremely detailed, and their statements to law enforcement are corroborated by several pieces of independent evidence, including: (i) their physical injuries; (ii) video surveillance; (iii) digital evidence, such as text messages; (iv) search warrant recoveries; and (v) Defendant Edwards's recorded jail calls. Taken together, this evidence establishes a compelling and consistent narrative of guilt across all three defendants. Accordingly, the strength of the evidence weighs decisively in favor of detention.

### III.    <u>The Defendant's History and Characteristics Merit Detention.</u>

The third factor—the defendant's history and characteristics—also weighs in favor of detention. Although Defendant Lee does not have any prior criminal history, she is young, impressionable, experienced on social media, and has demonstrated a willingness to engage in calculated and extreme violence as evidenced by her actions on October 20, 2025. Defendant Lee also lacks any verified employment.

### IV.    <u>The Defendant Presents a Danger to Our Community.</u>

The fourth and final factor—the danger that the defendant poses to any person, the community, or the administration of justice—also weighs heavily in favor of detention. Defendant Lee's conduct reveals that she is manipulative, violent, and that she completely disregards the rule of the law. There are two principal dangers the court must consider here.

First, Defendant Lee presents a clear danger of physical violence to others. Although it does not appear—at least at this stage of the case—that Defendant Lee physically attacked the victims, she still knowingly participated in a violent conspiracy. Specifically, it was Defendant

---

appropriate." *Id.* at \*10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). The Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

18

Lee who: (i) lured the victims to her residence for a supposed "babysitting job"; (ii) provided the venue for Defendant Bynum to surprise attack the victims with a knife; (iii) helped bind the victims in her basement bathroom as they were actively bleeding from their injuries; (iv) questioned Victim 1 about the Maryland case after Victim 1 had just been stabbed multiple times; (v) helped transport the victims in Victim 1's vehicle as they continued to be bound; and (vi) updated Defendant Edwards during the commission of the offenses. Defendant Lee is clearly comfortable with harm being inflicted on others, which is something the Court should consider in assessing her future dangerousness.

Second, the Court must consider the danger that Defendant Lee will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness if released. This risk is not merely theoretical given that Defendant Lee has already engaged in precisely that conduct. Defendant Edwards orchestrated this conspiracy from jail to silence a witness, while Defendants Bynum and Lee executed his plan with calculated precision. Even when the defendants' plan was coming off the rails, Defendant Lee was scheming with Defendant Edwards on what to do with the victims and how to escape from the area. The defendants' previous acts of intimidation and violent retaliation demonstrate that they are all fully capable of threatening, injuring, or coercing witnesses, or otherwise obstructing the administration of justice again. *See United States v. Lamar*, 600 F.Supp.3d 714, 721 (E.D. Ky. 2022) (assessing whether the defendant would endanger the community by posing a serious risk of attempting to obstruct justice if released). Detention is thus essential not only to protect the victims and the community, but also to preserve the integrity of this prosecution.[9]

---

[9]    The same arguments that show Defendant Lee presents a serious risk of obstruction, etc., apply to the risk of her nonappearance as well.

Therefore, this factor weighs heavily in favor of detention.

## **CONCLUSION**

There is no condition or combination of conditions that would ensure Defendant Lee's compliance with court-ordered release conditions. Defendant Lee poses a: (i) danger to others and the community at large; and (ii) serious risk that she will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness. Defendant Lee also present a risk of flight. For all the foregoing reasons, the United States respectfully requests the Court detain this defendant pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO

UNITED STATES ATTORNEY
D.C. Bar No. 481866

By:    _/s/ Joshua Satter_
       Joshua Satter
       Assistant United States Attorney
       NY Bar No. 5477112
       601 D Street NW
       Washington, DC 20579
       (202) 252-7566
       Josh.Satter@usdoj.gov